**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **BRANDON RAUEN and REBEKAH RAUEN,**<br>**Plaintiffs,**<br>**vs.**<br><br>**STRYKER CORPORATION and STRYKER SALES CORPORATION,**<br><br>**Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>**Case No. 2:09CV1002 DAK** |

This matter is before the court on Defendants Stryker Corporation and Stryker Sales Corporation's ("collectively referred to as "Defendants" or "Stryker") Motion for Summary Judgment. A hearing on the motion was held on August 29, 2012. At the hearing, Plaintiffs Brandon and Rebekah Rauen were represented by Richard E. Mrazik and John P. Ball. Stryker was represented by Hall R. Marston and Phillip J. Russell. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to these motions. Now being fully advised, the court renders the following Memorandum Decision and Order.

**BACKGROUND**

In their motion, Defendants argue that they are entitled to summary judgment on statute of limitations grounds. Specifically, they argue that Plaintiffs filed their lawsuit more than two years after they discovered, or in the exercise of due diligence should have discovered, Mr. Rauen's shoulder injury and the potential cause of the injury. As a result, Stryker contends,

Plaintiffs' claims were filed after the applicable two-year statute of limitations for products liability actions, and the claims are therefore time-barred and must be dismissed.

More specifically, Defendants contend that Mr. Rauen demonstrated "a baffling deficit of curiosity and urgency in seeking out the cause of his condition."[1] Defendants claim that Mr. Rauen did no research or investigation into the cause of his shoulder chondrolysis, and he eventually gave up trying to find out. Defendants contend that Mr. Rauen could have discovered the potential cause of his injury by at least October 2007, through consultation with a doctor or lawyer or by conducting an Internet search. But, they claim, Mr. Rauen simply did not exercise diligence in trying to find out.

Defendants argue that the discovery rule does not "allow plaintiffs to delay filing suit until they have ascertained every last detail of their claims." *McCollin v. Synthes Inc*., 50 F. Supp. 2d 1119, 1124 (D. Utah 1999). In fact, "all that is required to trigger the statute of limitations is sufficient information to put plaintiffs on notice to make further inquiry if they harbor doubts or questions." *Macris v. Sculptured Software, Inc*., 24 P.3d 984, 990 (Utah 2001). Indeed, Defendants contend, a plaintiff's failure to investigate his injury starts the statute of limitations running when "[t]here are others who can tell him if he has been wronged, and he need only ask." *McCollin*, 50 F. Supp. 2d at 1124 (quoting *United States v. Kubrick*, 444 U.S. 111, 122 (1979) (noting plaintiff "need only have made inquiry among doctors with average training and experience in such matters to have discovered that he probably had a good cause of

---

[1] Docket No. 51 at 17 (page number appearing in the header of the document).

action.").[2]

Plaintiffs, however, disagree that the action is time-barred. They argue that while Mr. Rauen was diagnosed with shoulder chondrolysis by Dr. Charles Beck in November 2004, the lawsuit was not filed until November 9, 2009 because Mr. Rauen did not know of the causal connection between chondrolysis and pain pumps until July 2008, despite his diligence in trying to figure out the cause. Therefore, Plaintiffs contend, whether Mr. Rauen exercised due diligence in determining the cause of his injury is a fact question for a jury.

**DISCUSSION**

In Utah, the limitations period begins to run when the claimant discovered, or in the exercise of due diligence should have discovered, both the harm and its cause. *See* Utah Code Ann. § 78C-6-706 (West 2009). Once the discovery rule is invoked, it falls to the fact finder to decide when the plaintiff discovered, or reasonably should have discovered, the facts that led to the products liability claim. *See Spears v. Warr*, 44 P.3d 742, 753 (Utah 2002) ("[T]he applicability of the statute of limitations and the discovery rule . . . is a question of fact.").

The evidence presented by Mr. Rauen suggests that after his diagnoses of chondrolysis on approximately November 11, 2004, Mr. Rauen consulted with several surgeons and a physical

---

[2] Defendants also rely on *Griffiths-Rast v. Sulzer Spine Tech,* 216 Fed.Appx. 790, 2007 WL 475830, (10th Cir., Feb. 15, 2007), a case initially decided by this court and affirmed by the Tenth Circuit Court of Appeals. The facts in *Griffiths-Rast*, however, were unlike the facts here. In *Griffiths-Rast,* the plaintiff testified that she "felt" like the BAK Cage, a spinal cage implanted in her back, was "defective" and that she "had been able to feel that it was defective since its implantation." There is no such testimony in the instant case. In addition, in *Griffiths-Rast*, the Plaintiff had not presented evidence such that a reasonable jury could find in her favor, unlike the evidence presented in the instant case.

therapist regarding his left shoulder. Mr. Rauen appears to have asked these healthcare providers about the cause of his chondrolysis, and, according to Mr. Rauen, they all responded that they did not know. Mr. Rauen contends that none of his healthcare providers ever raised the possibility that the condition of his left shoulder was related to a pain pump.

Specifically, Mr. Rauen saw Dr. Beck on November 11, 2005; November 30, 2004; and December 7, 2004. While it appears that Mr. Rauen did not specifically ask Dr. Beck about the cause of his chondrolysis after Dr. Beck allegedly responded on November 11, 2004 that he did not know, a jury could find that it was reasonable for Mr. Rauen to assume that Dr. Beck would have informed him of the cause of the chondrolysis if he had discovered it between Mr. Rauen's visits.

Also, Plaintiffs have presented evidence that, in 2004, Dr. Beck was telling his patients that he was not sure what was causing their chondrolysis and that Dr. Beck did not begin to inform his patients until the spring of 2005 (after Mr. Rauen had ceased treatment with Dr. Beck to see a different surgeon). And Dr. Beck admits that he was not successful in informing all of his patients–particularly those who were no longer seeking treatment from him.

Mr. Rauen has also presented evidence that he questioned his physical therapist, David Taylor, about the cause, and that Mr. Taylor also responded that he did not know. In addition, when Mr. Rauen grew frustrated with the lack of answers from Dr. Beck, he saw Dr. Metcalf in January 2005. During his time with Dr. Metcalf, he claims he "began asking again, you know,

what got me to this point?"[3] He claims that Dr. Metcalf did not know. As of January 2006, he claims that none of his healthcare providers he had seen since his diagnosis had provided him with any possibilities regarding the cause of his injury.[4] Mr. Rauen admits that he walked away from seeing surgeons for several years because they were not giving him answers, he was frustrated, and he felt that he had done all he could do.

In July 2008, Mr. Rauen claims he saw a local news broadcast regarding individuals who had shoulder surgery performed by Dr. Beck and who later demonstrated symptoms similar to Mr. Rauen's. According to Mr. Rauen, that was the first time he ever heard a suggestion that the chondrolysis in his left shoulder may be related to a pain pump.

Based upon the evidence presented, and viewing all reasonable inferences therefrom in a light most favorable to the non-moving party, the court finds that a reasonable jury could find that Mr. Rauen was reasonably diligent in seeking to discover the cause of his injury. Indeed, Defendants may be able to convince a jury that in the exercise of due diligence, Plaintiffs should have known the cause of the chondrolysis, but it is for a jury–and not this court–to decide when Plaintiffs discovered, or should have discovered, the cause of Mr. Rauen's injury. Accordingly, Defendants' motion for summary judgment is denied.

---

[3] Docket No. 52-1, Depo. of Brandon Rauen at 140-141.

[4] Plaintiffs point out that, in a legal memorandum filed with the court in August 2011, Stryker argued precisely the opposite of the position it takes now, asserting that the etiology of chondrolysis was unknown and unclear as of 2010. Thus, Plaintiffs underscore that Stryker now argues to this court that Mr. Rauen, a layman, should have discovered by 2007 that pain pumps were a potential cause of chondrolysis, despite having previously asserted that Stryker itself could not have known of a causal connection between pain pumps and chondrolysis as late as 2010, based on the information that was available at that date.

**CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED that Stryker's Motion for Summary Judgment [Docket No. 50] is DENIED.

DATED this 20th day of November, 2012.

BY THE COURT:

Dale A. Kimball

DALE A. KIMBALL
United States District Judge